UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BRANDI ADDISON** | * | **CIVIL ACTION NO.** |
| | * | |
| | * | **SECTION:** |
| | * | |
| | * | **JUDGE:** |
| **VERSUS** | * | |
| | * | |
| **FIRST GUARANTY BANCSHARES, INC.** | | |
| **d/b/a FIRST GUARANTY BANK** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMPLAINT WITH JURY DEMAND**

**NOW INTO COURT**, through undersigned counsel, comes Brandi Addison (hereinafter sometimes referred to as "Plaintiff" or "Ms. Addison"), an individual of the age of majority, domiciled in the State of Louisiana, Parish of Tangipahoa, who respectfully represents as follows:

1.

This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. §1331, for the reason that this action arises under the laws of the United States, and specifically, The Family and Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2601, et seq.

2.

Plaintiff is a citizen of the State of Louisiana, and is domiciled in and a resident of Tangipahoa, Louisiana.

3.

Defendant, First Guaranty Bancshares, Inc. d/b/a First Guaranty Bank (hereinafter sometimes referred to as "First Guaranty" or "Defendant") is a business corporation domiciled in and with its principal office in the State of Louisiana and Parish of Tangipahoa.

4.

Brandi Addison was hired by First Guaranty at its Hammond, Louisiana location within the Loan Operations Department. From her date of hire on March 15, 2021 until January 11, 2023, Ms. Addison served in her capacity as a National Loan Servicer without incident. Ms. Addison was never written up, disciplined, or reprimanded in any fashion.

5.

Unfortunately, on January 11, 2023, Ms. Addison was required to take medical leave due to the fact that she had several underlying medical conditions which required her to undergo medical treatment, a fact well known to First Guaranty. Ms. Addison's medical conditions include, but are not limited to, the following: Sjogren syndrome (a chronic autoimmune disease); congestive heart failure; trigeminal nerve neuralgia; and anxiety and depression.

6.

In December of 2022, Ms. Addison made First Guaranty aware that she would be out on medical leave from January 11, 2023 to February 7, 2023.

7.

Immediately upon Ms. Addison's return to work following her medical leave, she began to be treated differently. While Catherine Mathes, First Guaranty's Vice-President of Loan Operations, was cordial to Ms. Addison and seemed genuinely concerned, First Guaranty's President of Loan Operations, Lauryn Waits was polar opposite.

8.

Approximately four days upon her return to work, Ms. Addison advised Ms. Waits that she would need to go out on medical leave from March 27, 2023 until April 11, 2023 in order to

2

undergo defibrillator placement. Ms. Waits' immediate reaction to that news was one of disapproval and shock.

9.

Immediately thereafter, Ms. Waits began targeting Ms. Addison. Specifically, Ms. Waits began to question Ms. Addison regarding 200 titles that had gone missing while she was out on medical leave.

10.

The first request for the missing titles came from the loan recipient, OnSet, on or about January 13, 2023 while Ms. Addison was out on medical leave and was never addressed by First Guaranty.

11.

The second request was made on or about February 6, 2023, also while Ms. Addison was out on leave and was not responded to in any fashion by First Guaranty.

12.

During the week of February 20, 2023, a third request was sent.

13.

Ms. Addison was never made aware of the first two requests at any point between the time she returned to work on February 7, 2023 and the time of the third request.

14.

Shortly after the third request for OnSet's missing titles, Ms. Addison was contacted by Ms. Mathes inquiring whether Ms. Addison had found the titles.

3

15.

Ms. Addison stated what First Guaranty already knew, that she was not previously aware that the titles were missing due to the fact that the first two inquiries regarding their whereabouts were made during the time she was out on leave. Specifically, OnSet was requesting eight (8) of the 200 missing vehicle titles which were being held on collateral for their loan. Ms. Addison advised Ms. Mathes of this fact and Ms. Mathes did not reply.

16.

Ms. Addison reached out to the supervisor of the file room to inquire as to the whereabouts of the missing titles due to the fact that she had previously provided the titles to her prior to going out on medical leave. Ms. Addison later told Ms. Mathes that the titles were nowhere to be found.

17.

During the week of February 20, 2023, Ms. Mathes scheduled a meeting to take place on March 2, 2023. In response to that email, Ms. Addison made Ms. Mathes aware that she would be out of the office on that date in order to undergo cardiac catheterization although returning the next day. The meeting was rescheduled for the afternoon of March 1, 2023.

18.

On the morning of March 1, 2023, Ms. Addison clocked in at approximately 7:30 a.m. Approximately five minutes thereafter, Ms. Mathes sent Ms. Addison an email asking her to consult with the file room supervisor regarding the missing OnSet titles.

19.

When Ms. Addison complied with that directive, the file room supervisor communicated to Ms. Addison that she did not have the titles and thought that they were in Ms. Mathes' office. In response, Ms. Mathes again questioned Ms. Addison whether she possessed the titles.

20.

Shortly thereafter, Ms. Waits called Ms. Addison and in a very aggressive fashion, told Ms. Addison that she needed to search for the titles. At the time of Ms. Waits' call, Ms. Mathes was in her office. Ms. Waits said that the titles were scanned and sent to the file room supervisor. She told Ms. Addison to search for the files with the file room supervisor.

21.

Ms. Addison complied with Ms. Waits' request, went to the file room and searched again.

22.

At approximately 10:30 a.m., a meeting was held with Ms. Mathes, Ms. Waits, Chelsi Overturn and Desiree Simmons, First Guaranty's Senior Vice President and Chief Administrative Officer respectively. Shortly thereafter, Ms. Addison was advised by Ms. Mathes that she wanted to meet with her again on March 2, 2023 despite the fact that Ms. Addison was going to be out for cardiac catheterization, a fact previously known to Ms. Mathes. Almost immediately thereafter, Ms. Addison was advised that she was to meet with Human Resources on the afternoon of March 1, 2023 at 3:30 p.m.

23.

At that meeting, Ms. Addison was advised that she was being involuntarily separated from her employment for "insubordination".

24.

Approximately two weeks after Ms. Addison was terminated the titles were located by the file room supervisor.

25.

Although the above is the most egregious retaliation against Ms. Addison, there were other acts of retaliation against her including a February 28, 2023 email from Ms. Waits regarding ELS reports. Ms. Waits' email stated that Ms. Addison needed to research what went into ELS reports.

26.

In response, Ms. Addison advised Ms. Waits that she was placing items within the ELS report when she had not been previously instructed or advised where to place them. Ms. Mathes, who had been carbon copied on that correspondence, told Ms. Addison she would address her concerns but never did.

27.

Despite the fact that Ms. Addison had previously told Ms. Mathes that she felt overwhelmed upon her return to work in part because, in part, she had 2,700 incoming emails, First Guaranty did everything it could to make her arrival more traumatic than necessary. In addition to all that is stated above, two other issues were dumped on Ms. Addison's already full plate. First, the OnSet loan which was supposed to be paid off was not showing a zero balance. Ms. Addison was waiting for Ms. Mathes to advise her instruction on how to handle the situation and received no response.

28.

It is clear that Ms. Addison was being targeted for her taking medical leave from January 11, 2023 to February 7, 2023, and her intent to take leave again in order to undergo defibrillator placement.

29.

Although Ms. Addison felt she was being treated differently immediately upon her return to work on February 7, 2023, the retaliation was ratcheted up after Ms. Waits was advised that she would be going out on medical leave on a second occasion. Ms. Addison was targeted for things that occurred while she was out on leave and Ms. Addison was being set up in order to provide a pretext for involuntary separation from her employment. She was given additional job duties. She was being questioned regarding titles that were lost while she was out on leave. She was being treated in an unprofessional manner by Ms. Waits on a repeated basis.

30.

The ultimate act of retaliation occurred on March 1, 2023, the day before Ms. Addison was scheduled to be out for cardiac catheterization, when she was involuntarily separated from her employment.

**Count I—Violation of 29 U.S.C.A. § 2601, et seq.**
**The Family and Medical Leave Act ("FMLA")**
**FMLA Interference and Retaliation**

31.

Plaintiff reasserts each of the allegations set forth in Paragraphs 1-30 hereinabove.

32.

Plaintiff clearly informed First Guaranty of her serious medical condition which resulted in her taking medical leave from January 11, 2023 until February 7, 2023.

33.

Plaintiff again made First Guaranty aware on or about approximately February 11, 2023 that she would need to take medical leave again from March 27, 2023 until April 11, 2023 and for her to undergo defibrillator placement.

34.

Plaintiff suffered from a serious health condition, specifically, Sjogren syndrome, congestive heart failure, trigeminal nerve neuralgia and anxiety and depression, which she was treated by more than one physician for the conditions in the qualifying period.

35.

Plaintiff's serious medical condition affected her major life activities, such as the ability to work, or perform the functions of her position temporarily with First Guaranty.

36.

Plaintiff was discriminated and retaliated against as outlined in the preceding paragraphs as a result of her exercise of her right to take medical leave pursuant to the Family Medical Leave Act ("FMLA") from January 11, 2023 to February 7, 2023 and stating her intent to do so again from March 27, 2023 until April 11, 2023.

37.

Additionally and/or alternatively, by terminating Plaintiff from her employment on March 1, 2023, 26 days before her second request for leave date, Defendant unlawfully interfered with Plaintiff's ability to take advantage of her protected rights under, *inter alia*, the FMLA.

38.

Plaintiff believes and therefore alleges that Defendant's termination of Plaintiff was motivated in whole or in part by Plaintiff's right to seek leave under the FMLA.

39.

Plaintiff submits that as a result of Defendant's blatant willful act and/or act of wanton disregard in terminating her employment, for each and/or all of the reasons set forth in Count I hereinabove, Defendant is liable to Plaintiff for all damages she sustained which are recoverable

under the FMLA, including her monetary losses, an equal amount in liquidated damages, interest on all sums due, reinstatement of employment, and attorney fees.

40.

Plaintiff requests a trial by jury.

**WHEREFORE,** premises considered, Plaintiff, Brandi Addison, prays that this matter be set for jury trial and that a there be judgment herein in her favor and against Defendant First Guaranty Bancshares, Inc. d/b/a First Guaranty Bank, awarding Plaintiff all damages she sustained which are recoverable under the FMLA, including her monetary losses, an equal amount in liquidated damages, interest on all sums due, reinstatement of employment, and attorney fees.

Respectfully Submitted:

_____
Douglas R. Kraus Bar #26668
Susannah C. McKinney #24349
*Brener & Kraus, LLC*
1627 St. Charles Avenue
New Orleans, Louisiana 70130
Telephone: (504) 302-7802
Facsimile: (504) 302-4759
dkraus@brenerlawfirm.com
smckinney@brenerlawfirm.com
Attorneys for Brandi Addison